Argued and submitted September 22, affirmed November 24, 1980

SCULACE,
*Appellant - Cross-Respondent,*
*v.*
ROGERS et al,
*Respondents - Cross-Appellants.*

(No. A7711-15661, CA 15296)

619 P2d 1316

James B. Griswold, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Green & Griswold, Portland.

David C. Landis, Portland, argued the cause for respondent - cross-appellant Richard C. Rogers, M.D. With him on the brief were Landis, Aebi & Bailey, James M. Callahan, Paul R. Duden, and Tooze, Kerr, Marshall & Shenker, Portland.

Bruce Spaulding, Portland, argued the cause for respondent - cross-appellant Michael Henry, M.C. P.C. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Stephen R. Frank, Portland, argued the cause for respondent - cross-appellant Sisters of Providence in Oregon dba Providence Hospital, a corporation. On the brief were Paul R. Duden, Tooze, Kerr, Marshall & Shenker,

Landis Aebi & Bailey, David C. Landis and James M. Callahan, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

Plaintiff filed this medical malpractice action against defendants seeking damages for injuries she suffered while undergoing surgery. Trial was held, and the jury by special verdict found that plaintiff did not file her complaint within the time required by law. The central issue on appeal is whether plaintiff has preserved her claim of error that the jury was not properly instructed regarding the applicable statute of limitations, ORS 12.110(4).

Plaintiff underwent open heart surgery at Providence Hospital in Portland, Oregon, on October 22, 1975. Defendant Richard C. Rogers, M.D. was the chief surgeon for the procedure and defendant Michael Henry, M.D., was the anesthesiologist. The surgery began about 7:30 a.m. and proceeded satisfactorily. About 1:15 p.m., near the end of the surgery, it was discovered that plaintiff's left forearm was swollen, discolored and blistered. Blood and platelets had been pumped into plaintiff's left arm intravenously. At some point, the intravenous needle slipped outside the vein, thereby allowing the blood and platelets to infiltrate into the arm tissue. The placement of a blood pressure cuff on plaintiff's upper left arm served to prevent the infiltrating materials from moving up the arm. The circulation to plaintiff's arm was impaired, resulting in damage to the arm's nerve structure and causing plaintiff pain and a burning sensation.

Immediately after the surgery, Dr. Rogers spoke to plaintiff's husband and told him that something had happened to plaintiff's arm, that an intravenous needle had come out and plaintiff's arm was burned. He also told plaintiff's husband that he did not know how it had happened, that he had been busy with the actual surgery and had had nothing to do with the arm problem. Plaintiff's husband had no further conversations with Dr. Rogers about the damage to his wife's arm while she was in the hospital.

After the surgery, when plaintiff woke up in the recovery room, she knew something had happened to her arm. Two or three days after the surgery, her husband talked with her, and even though she was heavily sedated

she told him that her arm hurt and asked what had happened. He testified that he soft-pedalled the problem and simply told her that "you've got a little burning sensation." About a week after the surgery, toward the end of October, Dr. Rogers spoke to plaintiff about her arm. He told her that he had nothing to do with the arm problem, and that it was not his fault. Both Dr. Rogers and plaintiff's husband explained generally about the infiltration of material caused by dislocation of the intravenous needle. No one explained anything further to plaintiff about her arm before she left the hospital on November 5, 1975.

Plaintiff filed her complaint on November 3, 1977.

The controlling statute, ORS 12.110(4), provides in part:

"(4) An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. * * *'"

The issue presented to the jury was whether plaintiff discovered, or should have discovered, her injury prior to November 3, 1975. The trial court instructed the jury on ORS 12.110(4) as follows:

"It is claimed by the defendants and denied by the plaintiff that the plaintiff did not file her complaint within two years from the date that her cause of action arose. In this connection, I instruct you that the statutory law of the State of Oregon provides that a cause of action for medical malpractice arises when the injury is first discovered or in the exercise of reasonable care should have been discovered, and a complaint for that injury must be filed within two years from that date. *An injury is discovered when a reasonably prudent person associates her symptoms with a serious or permanent condition and at the same time perceives that the defendants played some role in causing or inducing that condition.*

"* * * * *." (Emphasis supplied.)

The emphasized portion of the court's instruction was derived from language in *Schiele v. Hobart,* 284 Or 483, 587 P2d 1010 (1978). In that case the court was presented with the problem of determining "when the two-

year statute of limitations contained in ORS 12.110(1) begins to run * * * on a claim alleging that defendants' negligence caused an occupational disease." 284 Or at 487. The court held that, in an occupational disease case where the plaintiff's actionable condition is alleged to be a permanent injury, the statute of limitations "begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition." 284 Or at 490.

Plaintiff claims that the court, by using the *Schiele* standard, improperly instructed the jury as to the application of the statute of limitations in a medical negligence case. She contends that the trial court's instruction only required the jury to find that she had notice of the harm suffered and its cause; it did not require, as it should have, the jury to find that she had notice of any negligence on the part of defendants more than two years prior to the date she filed her complaint. In essence her argument is that delayed discovery of any wrongful conduct will further postpone commencement of the statute of limitations even though the injured party has notice of the existence of the harm and its cause. Plaintiff relies principally on *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966), and *Frohs v. Greene,* 253 Or 1, 452 P2d 564 (1969).

Assuming for the sake of argument that the instruction given by the trial court was erroneous, defendants contend that plaintiff failed to preserve her claim of error on appeal. At trial plaintiff did not take an exception to the challenged instruction for the reason she now asserts. She did, however, request an alternate instruction and assigns as error the trial court's failure to give that instruction.[1]

---

[1] Plaintiff's Requested Instruction No. 7 reads as follows:

"Each of the defendants claim as an affirmative defense that plaintiff did not file her action against them within the time limited by law in the State of Oregon. Under the law, an action to recover damages for injuries to the person arising from any medical operation, shall be commenced within two years from date when the injury is first discovered or in the exercise of reasonable care, should have been discovered. Plaintiff claims that she did not and could not in the exercise of reasonable care, have discovered the

In some situations, a requested instruction may be sufficient to preserve error on appeal. *Crow v. Junior Boot-shops,* 241 Or 135, 404 P2d 789 (1965). This rule, however, was severely limited in *Holland v. Srs. of St. Joseph, Seeley,* 270 Or 129, 522 P2d 208, 526 P2d 577 (1974). The court stated:

> "In *Crow* the trial judge gave an instruction to the effect that contributory negligence was not a bar to plaintiff's recovery but could be considered only in mitigation of damages. The instruction was *clearly erroneous* because at that time contributory negligence was a bar to recovery.
> * * *
>
> "* * * * *
>
> "The rule requiring an exception to an instruction as the means of preserving error is a salutary one, as the trial court by the exception is given the opportunity of correcting the alleged error and so advising the jury. The conclusion of the court in *Crow* that the error was properly preserved by a requested instruction instead of an exception to the instruction given should not be further extended, and we have decided that it should not be applied in the instant case. * * *" 270 Or at 141-42. (Emphasis supplied.)

cause, nature and extent of her injury more than two years before she filed her lawsuit.

"In determining whether this case was filed within the period of limitations, there are certain undisputed facts which you shall consider. First, there is no question but that plaintiff's surgery was performed on October 22, 1975, and if any negligence occurred on the part of any of the defendants, it was on that date. Secondly, there's no question but that plaintiff's action for damages was filed on November 3, 1977.

"In determining whether or not, under the evidence, plaintiff was aware of her injury more than two years before November 3, 1977. [*sic*] In connection with this issue, you are instructed that under the meaning of this statute, *the word 'injury' refers to not only 'discovery of the injury' but also, 'discovery of the negligence' which lead* [sic] *to the injury.* In order for plaintiff to be barred from maintaining this action, it is not only necessary that she knew she suffered an injury to her body before November 3, 1975, but also, that she knew of the true cause of her injury and the true nature of the negligence of one or more of the defendants, which lead [*sic*] to this injury, sometime before November 3, 1975. The other basis for barring plaintiff's right to maintain the action is if under the evidence, plaintiff, in the exercise of reasonable care, should have discovered the true cause of her injury and the true nature of the negligence of one or more of the defendants. If you find that under the evidence plaintiff did not know these things before November 3, 1975 and could not have discovered them, in the exercise of reasonable care between October 22 and November 3, 1975, then she is not barred from maintaining this action. (Emphasis supplied.)

A requested instruction will suffice to preserve a claim of error only if it " 'clearly and directly' called to the attention of the trial court its error" in advising the jury according to the instructions given. *Roberts v. Mitchell Bros.,* 289 Or 119, 131, 611 P2d 297 (1980). We do not believe this test was met here. First, the trial court's instruction was not "clearly erroneous." The instruction was not a total misstatement of the law as in *Crow;* rather, it was a correct statement so far as it went.[2] Second, plaintiff's requested instruction was itself erroneous in part,[3] a factor which may have entered into the trial court's determination not to use it. Finally, there is no indication in the record that the trial court was ever expressly apprised of the issue plaintiff now raises. *Roberts v. Mitchell Bros., supra.* On the contrary, the record indicates that, prior to instructing the jury, all parties, including plaintiff, accepted a representation that the challenged instruction embodied the latest appellate pronouncements on the statute of limitations.

---

[2] The trial court instructed the jury that an "injury is discovered when a reasonably prudent person associates her symptoms with a serious or permanent condition * * *." This standard was formulated in *Schiele v. Hobart, supra,* to determine when a progressively debilitating occupational disease becomes actionable. The standard is not appropriate for all negligence cases. Negligent conduct frequently results in actionable injuries which are neither serious nor permanent. In this case, however, plaintiff testified that while she was in the hospital she got the impression that her arm was going to be all right and that the doctors would take care of it. In this situation the *Schiele* standard probably was appropriate. In any event, instructing the jury that plaintiff had to have had notice that her injury was "serious or permanent" was, if anything, favorable to her position.

The trial court correctly relied on *Schiele v. Hobart* insofar as that case stands for the proposition that the injury was not discovered until plaintiff had notice of her injury and its cause. *See also, U. S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976). The only reason why wholesale reliance possibly should not have been placed on *Schiele* is that, there, the Supreme Court was able to reach its result (reversal of summary judgment in favor of defendants) without deciding whether delayed discovery of the defendant's breach of duty might further postpone the commencement of the limitations period.

[3] Plaintiff would have had the trial court instruct the jury that the statute of limitations did not commence until she discovered "the true cause of her injury and the true nature of the negligence of one or more of the defendants * * *." Even under plaintiff's theory we do not believe such extensive knowledge would be necessary to begin the limitations period. All an injured person would need to learn is that he or she has a cause of action. *See Berry v. Branner, supra; Frohs v. Greene, supra.* Plaintiff would then have two years in which to file a complaint, and a great variety of discovery procedures would thereafter be available to aid in the determination of the "true cause" of the injury and the "true nature" of the negligence.

■■   We do not believe that a divergent clause in a requested instruction, standing alone, adequately informs the trial judge that the instruction he or she intends to give may be erroneous. The trial judge must be given an opportunity to correct any alleged error prior to instructing the jury. Under the circumstances of this case, we find that was not done. Accordingly, plaintiff has waived her claim of error.

Affirmed.[4]

---

[4] Due to our resolution of this case, we do not reach defendants' cross-appeals from denial of their various motions for a directed verdict.