Argued and submitted April 9, 1982, affirmed March 16, reconsideration denied April 29, petition for review denied May 24, 1983 (295 Or 122)

DUNCAN,
*Appellant - Cross-Respondent,*

*v.*

AUGTER,
*Respondent - Cross-Appellant.*

(76-218-L; CA A21819)

661 P2d 83

William H. Ferguson, Medford, argued the cause for appellant - cross-respondent. With him on the briefs was Grant, Ferguson & Carter, Medford.

Hugh B. Collins, Medford, argued the cause and filed the briefs for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Plaintiff commenced this medical malpractice action in 1976, seeking damages for injuries resulting from surgery performed by defendant in 1968. Defendant demurred, alleging that the claim was barred by the applicable statute of limitations, ORS 12.110(4). The trial court overruled the demurrer, and trial resulted in a verdict for plaintiff. The Supreme Court reversed, holding that the demurrer should have been sustained. *Duncan v. Augter,* 286 Or 723, 596 P2d 555 (1979). The mandate issued by the Supreme Court remanded for further proceedings and the trial court allowed plaintiff to file a second amended complaint. Defendant then moved for summary judgment on the grounds that ORS 12.110(4) barred the action. Plaintiff appeals from the order granting defendant's motion. We affirm.[1]

We take the facts from the record, the pleadings, the transcript of the original trial and the depositions of plaintiff, defendant, plaintiff's attorney and Dr. Watson, a physician who treated plaintiff following the 1968 surgery. Defendant operated on plaintiff to remove her gall bladder. He removed plaintiff's appendix as an incidental surgical procedure. Plaintiff continued to suffer pains in her abdomen and suspected that her discomfort resulted from the surgery. She was examined and treated by defendant for several weeks after the operation, but the symptoms continued.

By November, 1970, plaintiff had terminated her physician-patient relationship with defendant. In May, 1971, she consulted Dr. Watson about her chronic abdominal pain. He suspected a small bowel obstruction and with Dr. Rutter performed exploratory surgery. They relieved the obstruction and in the process found suture material of the kind used in the ligation of an appendix "stump" in a large abscess where the appendix had been. Both Dr. Watson and Dr. Rutter concluded that the abscess was the result of the 1968 surgery and hypothesized that it had resulted from "leakage from the [appendix] stump."

---

[1] Defendant's cross-appeal purports to be an appeal on the merits from the previous trial in which plaintiff obtained the judgment which was reversed in *Duncan v. Augter,* 286 Or 723, 596 P2d 555 (1979). Whatever defendant is attempting by this cross-appeal, if it is anything at all, it is moot.

After discussing the abscess with the two surgeons, plaintiff retained an attorney (Ferguson) "to investigate whether [she] had a claim or not." In October, 1971, after an initial review of plaintiff's medical records, Ferguson wrote to defendant:

"Since the gall bladder-appendix operation by yourself and the follow-up care by Dr. Albert A. Griffin, Mrs. Duncan has had to have surgery, as an infection apparently had continued with her from the operation. I have discussed the matter at length with Dr. Watson and Dr. Rutter and feel that negligence is present in the operation and follow-up care of Mrs. Duncan."

Later, following additional discussions with Dr. Rutter and Dr. Watson and another review of the medical records, Ferguson concluded that "the stitching that came apart from that operation could occur in the absence of negligence" and advised that the contemplated suit not be brought.

Plaintiff's lower abdominal pain persisted. In August, 1975, during further exploratory surgery, Dr. Watson and Dr. Meyerding found a large number of adhesions, or scar tissue, surrounding plaintiff's abdominal organs, making it difficult to identify and remove the source of her trouble. After taking out the right ovary, they discovered a piece of tissue adhering to the pelvic wall that a pathologist identified as the distal end or tip of the appendix. These doctors testified that the abdominal problems plaintiff experienced from 1968 to 1975 resulted from an infection coming from this fragment of her appendix.

In the second amended complaint, plaintiff alleged that defendant was negligent in three respects: failure to remove plaintiff's entire appendix, failure to discover that he had not removed the entire appendix, and failure to use an incision that would have allowed him to properly see and remove the entire appendix. Plaintiff also alleged that defendant told her that he had removed her entire appendix and that her post-operative ills were not a result of a complication from surgery, that these representations were false and misleading, that plaintiff and her doctors relied on these misrepresentations in their subsequent treatment and diagnosis and that the misleading nature of the representations was not discovered until the 1975 surgery.

Defendant's motion for summary judgment was made on the ground that plaintiff's claim was barred by ORS 12.110(4), for the following reasons:

"1) Plaintiff discovered or should have discovered her injury or cause of action in 1971.

"2) In 1971 the plaintiff discovered or should have discovered the falsity of the representation that plaintiff's post-operative ills were not due in any manner to any difficulty or complication resulting from the 1968 surgery.

"3) Regarding the representation that defendant had removed plaintiff's entire appendix:

"* * * * *

"(c) There was no actual reliance upon any such representation by plaintiff or her physicians.

"(d) Any reliance upon the representation by plaintiff or her physicians was unreasonable.

"(e) The representation was not a cause in fact of plaintiff's delay in commencing this action."

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. ORCP 47C. The record is viewed in the light most favorable to the party opposing the motion. *Huitt v. Smith,* 56 Or App 74, 77, 641 P2d 70 (1982).

ORS 12.110(4) provides:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

■   The threshold question here is when plaintiff discovered or should have discovered her injury within the meaning of ORS 12.110(4). ORS 12.110(4) codifies the discovery principle developed by case law, beginning with *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966), where the court held that the cause of action "accrued [and the statute of limitation began to run] at the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of the tort committed upon her person by defendant." 245 Or at 315-16. In *Hoffman v. Rockey,* 55 Or App 658, 663, 639 P2d 1284, *rev den* 292 Or 722 (1982) (involving medical malpractice and applying ORS 12.110(4)), we explained:

> "A plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured, (2) that the injury can be attributed to an act of the alleged tortfeasor, and (3) that the act of the alleged tortfeasor was somehow negligent. * * *"

Application of the rationale is an objective matter and contemplates that the facts known and those that would be disclosed through a diligent inquiry undertaken by a reasonable person in possession of those facts are to be considered together in determining when a plaintiff discovered a cause of action. *See* ORS 12.110(4); *Frohs v. Greene,* 253 Or 1, 7, 452 P2d 564 (1969) (medical malpractice); *Melgard v. Hanna,* 45 Or App 133, 607 P2d 795 (1980) (legal malpractice).

■   To start the running of the statute of limitations, a plaintiff need not have knowledge of facts that, if proved, would convince every reasonable factfinder that plaintiff should win. It is sufficient that a plaintiff have knowledge, actual or implied, of facts that, if proved, will at least raise an issue of fact on each element of the claim. Therefore, a plaintiff has discovered a cause of action and ORS 12.110(4) begins to run when he knows, or should know through diligent inquiry, facts from which a reasonable factfinder could conclude that the plaintiff's injury was caused by an act of the defendant that was somehow negligent.

Here, no genuine issue of material fact exists as to whether plaintiff should have discovered a cause of action

against defendant in 1971. There is no question that plaintiff knew she was injured. She experienced abdominal pain from immediately after her gall bladder surgery in 1968 until after her surgery in 1975. Further, plaintiff knew or should have known after her surgery in 1971 that her injury was caused by an act of defendant.

Dr. Watson and Dr. Rutter operated on plaintiff in 1971 to remove a bowel obstruction. During this surgery, they discovered an abscess where plaintiff's appendix had been. Both doctors believed that the abscess was a complication of the 1968 surgery performed by defendant, that the abscess was caused by a leakage from the appendix stump, that the abscess caused the bowel obstruction and that the obstruction and abscess caused plaintiff's lower abdominal pain. More specifically, Dr. Watson believed that the leakage and abscess were caused by defendant's use of an incision that did not allow him to view clearly and close off the appendix during surgery. Dr. Rutter believed that the leakage and abscess were caused by defendant's use of single stitching to close off the stump, which resulted in either an incomplete closure or a later slippage of the sutures. After her 1971 surgery, plaintiff hired attorney Ferguson to investigate whether she had a claim. There is no genuine issue of fact that a diligent inquiry by plaintiff and Ferguson would have revealed the above facts from which a reasonable person should have known that her injury was caused by an act or acts of defendant.

Similarly, a diligent inquiry by plaintiff and Ferguson would have uncovered facts from which a reasonable factfinder could conclude that defendant was somehow negligent. Dr. Watson testified that he had assisted in many gall bladder operations where the appendix was removed but that he had never before seen that type of surgery result in an appendiceal abscess and that the result of the 1968 surgery was the worst he had ever seen. He believed that the poor result, the abscess and infection, was caused by defendant's removal of the appendix through an incision that did not allow him to view the appendix clearly. Dr. Watson characterized defendant's decision to remove the appendix under these circumstances as "bad judgment." Dr. Watson also questioned whether the gall bladder surgery was necessary in the first place.

■ Ferguson concluded that plaintiff should not bring an action in 1971, because the abscess "could occur in the absence of negligence." He based his opinion on Dr. Watson's statement that he could not state positively whether defendant was negligent and on Dr. Rutter's statement that the stitches could have come apart in the absence of negligence. However, the relevant inquiry for statute of limitations purposes is not whether plaintiff knew *positively* that defendant was negligent; the question is whether plaintiff, and Ferguson, knew or should have known facts from which a reasonable person *could* find that defendant was somehow negligent. There is no genuine issue of fact that in 1971 plaintiff knew or should have known facts from which a reasonable factfinder could conclude that defendant was somehow negligent.

■ Plaintiff contends that she could not have discovered her cause of action until after her surgery in 1975. After performing surgery in 1975, both Dr. Watson and Dr. Meyerding concluded that plaintiff's abdominal pain had resulted from the distal end of her appendix, which caused the abscess and infection, and that defendant's failure to remove the entire appendix was negligent. Both doctors testified that there was no safe way of discovering the appendix tissue during the 1971 surgery. Plaintiff argues that she could not have discovered her cause of action until she could discover the true cause of her injury and the true nature of defendant's negligence. We rejected a similar argument in *Sculace v. Rogers,* 49 Or App 433, 439 n 3, 619 P2d 1316 (1980) (medical malpractice action involving the application of ORS 12.110(4)):

> "Plaintiff would have had the trial court instruct the jury that the statute of limitations did not commence until she discovered 'the true cause of her injury and the true nature of the negligence of one or more of the defendants * * *.' * * * [W]e do not believe such extensive knowledge would be necessary to begin the limitations period. All an injured person would need to learn is that he or she has a cause of action. *See Berry v. Branner, supra; Frohs v. Greene, supra.* Plaintiff would then have two years in which to file a complaint and a great variety of discovery procedures would thereafter be available to aid in the determination of the 'true cause' of the injury and the 'true nature' of the negligence."

■ We reject plaintiff's argument for similar reasons. The general policy behind the "discovery rule" is to delay the running of the statute of limitations until an injured person knows or should know that she has a cause of action so that the law does not strip her of a remedy before she could know she has been wronged. *Berry v. Branner, supra,* 245 Or at 312. Here, plaintiff should have known in 1971 that she had a cause of action; she should have discovered facts from which a reasonable person could find that her abdominal pain was caused by an infection, that the infection was a complication from her 1968 surgery, that the complication resulted from defendant's act of removing the appendix through the gall bladder incision and that defendant's decision to remove the appendix through that incision or his decision to operate at all was negligent. Even if plaintiff could not have discovered all of the underlying medical causes of infection in 1971, including the distal end of the appendix, and even if she could not have discovered *that* cause before trial, she could have brought an action based on the facts outlined above, and a reasonable jury could have returned a verdict in her favor.

■ Plaintiff also argues that she failed to discover her cause of action in 1971, because she relied on defendant's misrepresentations and, therefore, under ORS 12.110(4), she could bring her action within two years of the time she discovered the falsity of the representations. However, a defendant's misrepresentations delay the running of ORS 12.110(4) only if they actually mislead the plaintiff and cause the plaintiff not to pursue the claim until she discovers the misrepresentations. *Duncan v. Augter, supra,* 286 Or at 731-32. A defendant's misrepresentations do not delay the running of the statute of limitations if the plaintiff knew or should have known that she had a cause of action despite the representations. *Sanchey v. South Hoover Hospital,* 132 Cal Rptr 657, 18 Cal3d 93, 553 P2d 1129 (1976).

Plaintiff alleges that she failed to discover her cause of action until 1975, because she relied on defendant's representations that her abdominal pains were not a result of a complication of her 1968 surgery and that defendant had removed her entire appendix. However, it is undisputed that plaintiff had hired Ferguson in 1971 to investigate

whether she had a claim against defendant and that Ferguson's investigation revealed that her pains were caused by possible negligence connected with the 1968 surgery. Thus, even if plaintiff continued to rely on defendant's statement that he had removed her entire appendix, she should have known that her continued pain was attributable to the surgery and thus that his representation was false. The statute of limitations began running in 1971.

■   In summary, there is no issue of fact that plaintiff should have discovered her cause of action against defendant in 1971, although it cannot be said she should have learned the full extent of defendant's negligence. She initiated this action in 1976. Therefore, her action is barred by ORS 12.110(4), and the trial court did not err in granting defendant's motion for summary judgment.[2]

Affirmed.

**ROSSMAN, J.,** dissenting.

Apparently, *Dortch v. A.H. Robins, Inc.,* 59 Or App 310, 650 P2d 1046 (1982), is not to be the last attempt by this court to turn the discovery principle on its head, if not eliminate it entirely. The majority finds that from an admixture of facts and hypotheses known in 1971, plaintiff *could have* fashioned a complaint for malpractice and holds

---

[2] Plaintiff also assigns error to the granting of defendant's motion to disqualify the trial judge. She argues that the motion was not timely filed under ORS 14.260 and that the affidavit seeking the judge's disqualification was filed without notice or opportunity for counsel for plaintiff to be heard on the matter. ORS 14.260 provides, in part, that:

"* * * [the] affidavit shall be filed with such motion at any time prior to final determination of such cause, matter or proceedings in uncontested cases, and in contested cases before or within five days after such cause, matter or proceeding is at issue upon a question of fact * * * [but no] motion to disqualify a judge shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time in the cause, matter or proceeding. * * *"

The record indicates that the motion was not timely; therefore, the judge was not required to disqualify himself. Furthermore, defendant does not deny that his motion and affidavit were filed without notice to plaintiff and that plaintiff's counsel was not afforded a chance to argue the motion. Although the motion was untimely and although we certainly do not approve of the filing of a motion without notice to opposing counsel, we are not convinced that reversing the trial court's order denying plaintiff's motion to set aside the disqualification order would serve any purpose.

that, therefore, discovery of her cause of action occurred then and that the present action is barred, notwithstanding the following:

(1) the act of defendant that would have been alleged in 1971 to be the cause of plaintiff's injury was not in fact the cause;

(2) the negligent act that caused the injury would not have been revealed by pretrial discovery procedures had a complaint been filed in 1971;

(3) the negligent act that caused the injury was not and could not have been discovered before 1975; and

(4) this action was commenced within two years of the discovery of that act and the misleading representation of defendant alleged to have delayed the discovery.

It simply makes no sense to require, in effect, that a plaintiff bring an action for damages on a theory of negligence that later is discovered to be factually wrong and to bar the plaintiff from bringing an action on the correct theory. As the court stated in *Berry v. Branner,* 245 Or 307, 312, 421 P2d 996 (1966):

"* * * To say to one who has been wronged, 'You had a remedy, but before *the wrong* was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law. * * * " (Emphasis supplied.)

That is precisely what the majority is telling plaintiff here. Therefore, I respectfully dissent.

The facts make this a unique and difficult case. Usually, the cause of action said to be barred and the tort a defendant claims was discovered beyond the period of limitation are one and the same. That is not the case here. In 1968, defendant removed plaintiff's appendix during a gall bladder operation. Plaintiff suffered pain and discomfort in her abdomen following the surgery. She was examined and treated by defendant for several weeks after the operation, but the symptoms continued. In plaintiff's second amended complaint she alleges that, during post-operative treatment, defendant told her that he had taken out the entire appendix and that the ills that she was suffering were not due "in any manner, to any difficulty or complication as a result of the [1968] surgery"; that these representations "continued to be made" until plaintiff had left defendant's care and

that "said representations * * * were false and misleading." Plaintiff testified that the statements alleged had been made and stated that, during one of her post-operative visits to defendant's office, defendant told her that:

"* * * he had taken my gall bladder out, that the surgery had proceeded real well until he came to the appendix and it was in an abnormal position or something, but *he said he finally got it all out.*" (Emphasis supplied.)

In May, 1971, Dr. Watson and Dr. Rutter performed exploratory surgery to relieve a bowel obstruction and in the process found stitches in a large abscess where the appendix had been. Both Dr. Watson and Dr. Rutter believed that the abscess was the result of the 1968 surgery, and they hypothesized at the time that it was caused by "leakage from the [appendix] stump." The malpractice action contemplated following the discovery of the abscess was not filed, because plaintiff's attorney, after discussions with Dr. Rutter and Dr. Watson and a review of the medical records, concluded that "the stitching that came apart from that operation could occur in the absence of negligence."

Plaintiff's abdominal pain continued, and in August, 1975, during further exploratory surgery, Dr. Watson and Dr. Meyerding discovered a piece of tissue that a pathologist identified as appendix tissue and that Drs. Watson and Meyerding concluded was the distal end or tip of the appendix. Both doctors testified that the abdominal problems plaintiff experienced from 1968 to 1975 resulted from bacterial contamination coming from this fragment of her appendix.

As the majority observes, the threshold issue is "when the injury [was] first discovered or in the exercise of reasonable care should have been discovered." ORS 12.110(4). The majority correctly states:

"* * * ORS 12.110(4) codifies the discovery principle developed by case law, beginning with *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966). In *Berry,* the court held that the cause of action "accrued [and the statute of limitation began to run] at the time plaintiff obtained knowledge, or reasonably should have obtained knowledge of *the tort* committed upon her person by defendant." 245

Or at 315-16. In *Hoffman v. Rockey,* 55 Or App 658, 663, 639 P2d 1284 (1982) (involving medical malpractice and applying ORS 12.110(4)), we explained that:

"A plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured, (2) that the injury *can be attributed to an act* of the alleged tortfeasor, and (3) that *the act* of the alleged tortfeasor was somehow negligent. * * * "

"Application of the rationale is an objective matter and contemplates that the facts known and those that would be disclosed through a diligent inquiry undertaken by a reasonable person in possession of those facts are to be considered together in determining when a plaintiff discovered a cause of action." (Emphasis supplied.)

Conversely, even though the facts known would cause a reasonable person to attempt to determine the nature or cause of an injury, if for some reason those facts and the results of reasonable inquiry taken together do not or should not reveal the injury or the negligent conduct of defendant causing the injury, there is no discovery and the statute does not begin to run. *See Frohs v. Greene,* 253 Or 1, 452 P2d 564 (1969).

Until "the tort" is discovered, *i.e.,* until "the [negligent] act" is known, the statute does not begin to run. *Hoffman v. Rockey, supra.* The majority asserts:

"* * * Plaintiff should have known in 1971 that she had a cause of action; she should have discovered facts from which a reasonable person could find that her abdominal pain was caused by an infection, that the infection was a complication from her 1968 surgery, that the complication resulted from defendant's act of removing the appendix through the gall bladder incision, and that defendant's *decision to remove the appendix through that incision or his decision to operate at all were negligent.*"

This information does not constitute knowledge of defendant's negligent conduct. The fact of defendant's removing the appendix through the gall bladder incision had no significance with respect to the discovery of the tort alleged until the discovery of the piece of appendix tissue in 1975. Indeed, that fact had no more significance in 1971 than the information that defendant had performed the surgery. Discovery requires more than knowledge of a bad result.

Plaintiff's claim for damages rests on the allegation that her injury was caused by defendant's negligent *act* of leaving the distal portion of her appendix in her body. The appropriate inquiry is when that act should have been discovered.

There is no question that, following the *1975* surgery, plaintiff knew she had a cause of action; *i.e.,* she knew that she had been injured, that the injury, according to her physicians, was caused by defendant's failure to remove all of her appendix and that such an omission was probably negligent. *See Hoffman v. Rockey, supra,* 55 Or App at 663. The question whether discovery occurred *before* the 1975 surgery is resolved by determining whether, before that event, the facts known to plaintiff and those facts that would have been disclosed through reasonable and diligent inquiry would have revealed the existence of the cause of action *alleged,* and in particular, the failure of defendant to remove all of plaintiff's appendix.

Dr. Watson testified that there was "no safe way of discovering" the appendix tissue during the 1971 surgery. He explained that he did not expect to find such tissue, because he'd "never heard of it not being totally removed" and that, because of the existence of the abscess cavity and the risk of spreading the infection further, exploration would have been "poor surgical judgment." Immediately after the 1971 surgery, plaintiff, through her physicians and attorney, began an inquiry into the cause of the infection disclosed by the surgery. The inquiry, which included a review of plaintiff's medical records from the 1968 surgery, did not, in fact, reveal the incomplete removal of the appendix. The pathologist who examined the appendix taken from plaintiff in 1968 testified that it was "complete with the distal tip portion intact" and that, if the appendix had not been complete, that fact would have been noted in his report. Plaintiff alleges that she continued to rely on defendant's representation that he had removed her entire appendix until the 1975 surgery revealed otherwise. She testified that, after the discovery of the infection during the 1971 surgery, she continued to believe defendant's statement that her post-operative problems were not related to the surgery that defendant had performed.

On the other hand, plaintiff suspected even before the 1971 surgery that her continuing abdominal problems "had to be related" to the 1968 surgery. Dr. Rutter explained in his affidavit that when he discovered the abscess, he "knew it was a complication secondary to the removal of the patient's appendix." In a 1971 letter to Ferguson, Dr. Watson stated that "some difficult questions * * * should be answered," among them whether there was "adequate surgical exposure to facilitate the incidental removal of the appendix." The 1968 hospital records reviewed by Dr. Rutter, Dr. Watson and Ferguson included defendant's surgical dictation, which contained the following description: "The appendix was elongated, retrocecal in location [i.e. lying behind the cecum and therefore difficult to visualize], bound down by dense adhesions * * *." Dr. Watson testified that "if you haul a retrocecal appendix into view, it would be easy accidentally to separate it [and that] it might have been missed when it came apart in freeing it up."

Under these circumstances, I believe that genuine issues of fact exist as to whether the inquiry undertaken following the 1971 surgery by plaintiff, her physicians and her attorney was reasonable and diligent and, if not, whether the facts known and those that a reasonble inquiry would have disclosed would have revealed the existence of the cause of action more than two years before plaintiff's claim was filed. For the same reason, it cannot be said that, following the 1971 surgery, the alleged continued reliance by plaintiff and her physicians on the representation that defendant had removed "all" of the appendix was entirely unreasonable or misplaced, although, presumably, it was obvious that her infection was connected with the 1968 surgery. An issue of fact therefore exists as to when the falsity of that representation was discovered.

Thus, although the majority's statement of what plaintiff knew or should have known in 1971 is correct, its assessment of the implications of such knowledge is not. The suspected cause of plaintiff's injury in 1971 is fundamentally different from the causative act alleged. The action contemplated in 1971 was based on the conclusion that the infection was caused by leakage from the stump or

"sloughing off" of the stump tissue itself. Assuming *arguendo* that the actual cause of the infection was a piece of appendix tissue found in 1975, that conclusion was wrong. The fact that there may have been a discovery of a "hypothetical" cause of action in 1971 is immaterial to the question when this cause of action was discovered.

While it is certainly true, as the majority suggests, that all details of a defendant's negligent conduct need not be known before the statute begins to run, that principle, given the critical character of the fact *not* known in 1971, does not apply here. First, the 1975 discovery of the piece of plaintiff's appendix completely changed the physicians' conclusion as to the cause of the abdominal injury she had suffered from 1968 until 1971 and explained the problems that continued following the 1971 surgery. That discovery identified "the [negligent] act" and, as stated above, made significant defendant's act of removing the appendix through the gall bladder incision. Second, unless the majority is willing to assume that exploratory surgery would have been part of the pretrial discovery procedure had a complaint been filed in 1971, the quoted language from *Sculace v. Rogers,* 49 Or App 433, 619 P2d 1316 (1980), is completely inapplicable to this case. Plaintiff did not, in fact, know between 1971 and 1975 that defendant had not removed her entire appendix. There is no question that she should have inquired into the cause of the infection discovered in 1971; however, whether that inquiry should have revealed the incomplete removal of her appendix or made unreasonable further reliance on defendant's statement that he had gotten "it all out" is a question of material fact.