Argued and submitted January 6, reversed and remanded March 12, 1986

SAENZ et al,
*Respondents,*

*v.*

PITTENGER et al,
*Defendants,*

BLINKHORN COMPANY,
*Appellant.*

(16-79-09507; CA A35102)

715 P2d 1126

Charles G. Duncan, Eugene, argued the cause and filed the brief for appellant.

John Mehringer, Eugene, argued the cause for respondents. With him on the brief was Schmerer & Mehringer, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

**WARREN, J.**

This case arose from a sale of real property to plaintiffs. Defendant Blinkhorn Company (Blinkhorn) appeals from a judgment entered against it on a claim for an unlawful trade practice. Plaintiffs discovered that the well on the property did not produce an adequate supply of water for household use, contrary to alleged representations made by defendants. They commenced this action with claims for breach of contract against the sellers, defendants Pittenger, unlawful trade practice against real estate brokers Blinkhorn and Iverson Hughes, Inc., and their agents, and common-law fraud against all defendants. The trial court, after trial without a jury, found for all defendants on the common-law fraud claim and entered a judgment against the Pittengers on the breach of contract claim. The court also entered a judgment against both brokers and Iverson Hughes' agent, Tom Schmidt, on the unlawful trade practice claim and granted Blinkhorn's agent, Harold Schmidt, a directed verdict on that claim. Only Blinkhorn appeals, contending that the court erred in denying it a directed verdict on the claim for an unlawful trade practice on the ground that the Statute of Limitations barred the claim.[1]

On March 6, 1978, Blinkhorn's agent Harold Schmidt, listed the Pittengers' property for sale. It was a multiple listing agreement and indicated in the "remarks" section: "Water level lowers during summer. Enough for family use but not enough for laundry during August and Sept." That statement accurately indicated what the Pittengers told Harold about the water situation. As a subscriber to the multiple listing service, an agent of the selling broker Iverson Hughes, Tom Schmidt, saw the listing. Plaintiffs dealt only with Tom Schmidt in their negotiations to buy the Pittengers' property.

On March 9, 1978, plaintiffs and the Pittengers entered into a contract of sale for the Pittengers' property. The agreement contained a printed clause by which the sellers represented "that the water well located on the property has

---

[1] Blinkhorn also contends on appeal that there was insufficient evidence to support a finding that it committed an unlawful trade practice and that the trial court erred in denying its objections to the amount of attorney fees claimed in plaintiffs' cost bill. Because of our disposition, we need not reach these other assignments of error.

provided an adequate supply of water during the entire year for household use." Plaintiff Saenz testified that Tom Schmidt reassured her at that time that the water situation was fine. The buyers did not have contact with any agents of Blinkhorn during the negotiations.

Plaintiffs moved onto the property soon after signing the contract, and by mid-July, 1978, the well ran completely out of water. By September 1, 1978, the well had run completely dry five times, usually, according to Saenz's testimony, for at least one week at a time. On August 4, 1978, plaintiffs contacted an attorney in an attempt to rectify the situation. Plaintiffs' attorney, by letter dated August 11, 1978, contacted all the defendants, including Blinkhorn. The letter stated, in pertinent part:

"My clients inform me that the well, located on the property does not provide adequate water for domestic household use, sometimes going completely dry for one to two days at a time. As a result, they have had to curtail normal domestic water-using activities, and have been forced to haul drinking water to their home.

"Your attention is drawn to the earnest money agreement under which this sale was completed, which contains a representation that the well located on the premises 'has provided an adequate supply of water during the entire year.'

"Obviously, this representation is false, and my clients have been damaged as a result of such representation. Additionally, one or more of you, or your agents, represented to my clients during the process of sale that the pump on the well was 'new.' In fact, the pump is at least 13 years old, having been manufactured in 1964 and installed, according to a representative of the manufacturer, not later than 1965.

"I now call upon you, and each of you, to immediately make arrangements to repair or replace the subject well, as required. In addition, my clients must be compensated for expenses suffered in hauling water, for their damages caused by the forced abandonment of their garden, and for their loss of full use and benefit of their home."

Saenz testified that she had a conversation with Tom Schmidt "probably in November," 1978, in which she learned for the first time that he had knowledge of the problem with the water before the contract was signed. Saenz's dating of this conversation to November, 1978, is equivocal, but she

stated that it occurred after her attorney sent the August 11 letter and "in response to the letter that [Schmidt] received." Saenz also testified that she had not seen the listing agreement before signing the contract, but that she first saw it after contacting an attorney in August, 1978. Plaintiffs state in their brief that Saenz's "best recollection" is that she received the document in "November, 1979" [*sic*]. That overstates the record. With regard to when she received the listing agreement, Saenz testified, "I don't recall the exact date. * * * It had to have been * * * at least after I started seeing [my attorney]. When? In August. Probably not before October, November. I have no idea."

Plaintiffs commenced this action on October 9, 1979. Blinkhorn asserted in its answer an affirmative defense that plaintiffs' claim for an unlawful trade practice was barred by the one-year Statute of Limitations in ORS 646.638(5). That section provides that actions claiming an unlawful trade practice "shall be commenced within one year from the discovery of the unlawful method, act or practice." Blinkhorn moved for a directed verdict and to set aside the judgment on this ground. The trial court denied both motions, ruling that the issue of when plaintiffs discovered the alleged unlawful act presented a disputed issue of fact. Blinkhorn assigns that ruling as error, claiming that the claim was barred as a matter of law.

In *Bodin v. B & L Furniture Co.*, 42 Or App 731, 735, 601 P2d 848 (1979), we applied the test used to determine when a cause of action for common law fraud accrues to an unlawful trade practice claim and adopted the following statement from *Mathies v. Hoeck*, 284 Or 539, 542-43, 588 P2d 1 (1978):

> "* * * [T]he period of limitations for fraud begins to run when the plaintiff knew or should have known of the alleged fraud. Whether the plaintiff should have known of the alleged fraud depends on a two-step analysis. First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry * * *.' * * * If plaintiff had such knowledge, it must also appear that 'a reasonably diligent inquiry would disclose' the fraud. * * *" (Citations omitted.)

Applying that standard to the facts of this case, we hold, as a

matter of law, that plaintiffs are held to have "discovered" the alleged unlawful act on the part of Blinkhorn in August, 1978, and that the claim for unlawful trade practice is barred by the Statute of Limitations.

Plaintiffs presented evidence that Iverson Hughes was a sub-agent of Blinkhorn under the multiple listing agreement and that any misrepresentations and omissions made by the agent of Hughes, Tom Schmidt, during the course and in the scope of the sub-agency are attributable to Blinkhorn. Plaintiffs and the trial court relied on Saenz's testimony that she did not learn until November, 1978, that Tom Schmidt had actual knowledge of the poor water situation to support the conclusion that plaintiffs did not discover the unlawful act until November, 1978, which would make the October, 1979, filing of their complaint timely. Plaintiffs are incorrect.

Plaintiffs' attorney's letter of August 11, 1978, indicates that plaintiffs then knew of the alleged misrepresentation made with regard to the quantity and quality of water. Saenz knew at that time that Tom Schmidt had made statements to her about the water situation that were not true, and she certainly had sufficient knowledge to call for an inquiry into the defendants' liability at that time. Although she did not know at that time that she could prove that the statements were made with knowledge of their falsity, she knew that she had been damaged by a false statement and who had made it. That is sufficient to commence the running of the Statute of Limitations. *See Duncan v. Augter,* 62 Or App 250, 255, 661 P2d 83, *rev den* 295 Or 122 (1983). The trial court erred in denying Blinkhorn's motion for a directed verdict.

Judgment in favor of respondent is reversed and remanded for entry of judgment in favor of appellant.