Argued and submitted February 20, 1985, reversed on appeal; affirmed on cross-appeal
August 13, reconsideration denied October 3, petition for review allowed
November 20, 1986 (302 Or 299)

# DUYCK et al,
## *Respondents - Cross-Appellants,*
### *v.*
# TUALATIN VALLEY IRRIGATION DISTRICT,
## *Appellant - Cross-Respondent.*

### (41-164; CA A32381)

723 P2d 1043

Alfred T. McGill, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were John D. Colby and McGill & Kapranos, Portland.

Thomas J. Moore, Hillsboro, argued the cause for respondents - cross-appellants. With him on the briefs were Brink, Moore, Brink & Peterson, Hillsboro.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

Newman, J., dissenting on the appeal; concurring on the cross-appeal.

### RICHARDSON, P. J.

Defendant appeals a judgment for plaintiffs on plaintiffs' negligence claim. Plaintiffs cross-appeal, challenging the partial summary judgment on and dismissal of their breach of contract claim. We reverse on the appeal and affirm on the cross-appeal.

Plaintiffs own several farms, including the Gun Club Farm and the Gregg Farm in Washington County. Defendant is an irrigation district and a public body under the Oregon Tort Claims Act. ORS 30.260. Plaintiffs were members of defendant and paid members' fees and assessments. Defendant was formed to act as the spokesman and information source for farmers in Washington County who sought an irrigation system from the United States Interior Department's Bureau of Reclamation. The Bureau was responsible to plan, engineer and construct a new irrigation system, which included 85 miles of pipeline to deliver water to plaintiffs' and other farms in Washington County. Plaintiffs raise romano beans on the Gun Club Farm and strawberries and bush beans on the Gregg Farm. The growing season for the crops is June through August. Plaintiffs were among more than 300 members of defendant who were to receive water from the new irrigation system.

Defendant had special access to information regarding the progress of construction, and plaintiffs relied on defendant for information about the irrigation system. Early in 1978, defendant informed its members that water would be available for the 1978 growing season. Although defendant knew or should have known by the spring of 1978 that it was likely that no water would be available until late summer, it continued to represent to plaintiffs that water would be available for the 1978 growing season.

Because they believed that they would have water for the growing season, plaintiffs purchased seedlings and prepared fields before June 1 so that they could plant strawberries on the Gregg Farm shortly after that date. They also planted beans on both farms in May, 1978, and they entered into a contract to sell beans to a canner.[1] On May 28, a

---

[1] Plaintiffs plowed up and replanted half of the bean crop sometime in mid-June. Lack of water had partially destroyed it.

substantial leak occurred in the irrigation line that was to supply water to plaintiffs' farms. There was evidence that leaks had developed regularly on the lines that had been constructed, particularly on lines serving plaintiffs' farms. Defendant did not warn plaintiffs that the May 28 leak would delay water delivery or that its earlier representations were inaccurate. There was also evidence that, even had the May 28 leak not occurred, water would not have been delivered before late summer.

Plaintiffs recognized that the May 28 leak was going to delay water delivery somewhat. They believed, however, that the delay would be brief, and they planted strawberries on the Gregg Farm during the first few days of June. In the first week of June, they installed a temporary irrigation system to supply water from a neighbor's pond. That source dried up in mid-June. The construction and use of the temporary system ultimately cost plaintiffs $6,000. Because plaintiffs did not receive irrigation water at the two farms until the late summer of 1978, the strawberry and bean crops were damaged.

Plaintiffs filed this action on June 18, 1980, alleging that defendant negligently represented that irrigation water would be available to the farms for the 1978 growing season and that defendant negligently failed to warn plaintiffs that water might not be available. Plaintiffs did not make defendant's failure to deliver water a basis for their negligence claim. However, they alleged that defendant breached its contract to supply water to the farms in time for the 1978 growing season. Defendant denied plaintiffs' allegations and alleged affirmatively that the negligence claim was not filed within the two-year Statute of Limitations. ORS 30.275(8).

The court granted defendant's motion for summary judgment on plaintiffs' contract claim but denied defendant's motions for summary judgment and for a directed verdict on the negligence claim. On appeal, defendant argues that those rulings on the negligence claim were erroneous, because, *inter alia,* the action was barred as a matter of law by the two-year Statute of Limitations.[2]

---

[2] The court's denial of defendant's motion for summary judgment is not reviewable. *Mt. Fir Lumber Co. v. Temple Dist. Co.,* 70 Or App 192, 688 P2d 1378 (1984); *but see Payless Drug Stores v. Brown,* 300 Or 243, 708 P2d 1143 (1985). The denial of the directed verdict motion is reviewable.

■ The crux of the parties' disagreement is over when plaintiffs were harmed by defendant's negligence.[3] The Statute of Limitations runs from the date when plaintiffs knew or should have known that (1) defendant was negligent, (2) plaintiffs were harmed and (3) the harm was the result of defendant's negligence. *See, e.g., Peterson v. Mult. Co. Sch. Dist. No. 1,* 64 Or App 81, 668 P2d 385, *rev den* 295 Or 773 (1983). The question here is *what* harm triggered the running of the statute. Plaintiffs take the view that the relevant harm was the ultimate injury to their crops, which occurred less than two years before they brought this action. Defendant maintains that, at the latest, plaintiffs' arrangement for the alternative irrigation system in early June, 1978, more than two years before the action was brought, initiated the running of the statute.

We are constrained to agree with defendant. The controlling authority, cited by neither party, is *Duncan v. Augter,* 62 Or App 250, 661 P2d 83, *rev den* 295 Or 122 (1983). We held there that the running of the two-year limitation period of ORS 12.110(4) did not remain tolled until the plaintiff learned in 1975 of serious consequences of the defendant physician's negligence in performing surgery in 1968, because the plaintiff knew or should have known by 1971 that the negligence had produced some harm, albeit of a lesser magnitude than the harm she discovered in 1975. We explained:

"To start the running of the statute of limitations, a plaintiff need not have knowledge of facts that, if proved, would convince every reasonable factfinder that plaintiff should win. It is sufficient that a plaintiff have knowledge, actual or implied, of facts that, if proved, will at least raise an

---

[3] Defendant also argues, in the alternative, that this action is analogous to one for fraud and that the running of the statute therefore dates from plaintiffs' knowledge or reasonable knowledge that the representations were false rather than their knowledge that they were harmed. *See* ORS 12.110(1); *Mathies v. Hoeck,* 284 Or 539, 588 P2d 1 (1978). This is an action for negligence, not fraud. In any event, our holding in defendant's favor on when plaintiffs were harmed makes it immaterial whether the statute began to run at an earlier time.

Plaintiffs also argue that defendant relied in the trial court solely on the limitation period under ORS 30.275 but seeks on appeal to invoke ORS 12.110(1) and case law interpreting it. For purposes of the legal principles that are decisive here, the case law construing ORS 12.110(1) is equally germane to ORS 30.275(8). *See Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980).

issue of fact on each element of the claim. Therefore a plaintiff has discovered a cause of action and ORS 12.110(4) begins to run when he knows, or should know through diligent inquiry, facts from which a reasonable factfinder could conclude that the plaintiff's injury was caused by an act of the defendant that was somehow negligent.

"* * * * *

"* * * The general policy behind the 'discovery rule' is to delay the running of the statute of limitations until an injured person knows or should know that she has a cause of action so that the law does not strip her of a remedy before she could know she has been wronged. *Berry v. Branner,* [245 Or 307, 312, 421 P2d 996 (1966)]. Here, plaintiff should have known in 1971 that she had a cause of action; she should have discovered facts from which a reasonable person could find that her abdominal pain was caused by an infection, that the infection was a complication from her 1968 surgery, that the complication resulted from defendant's act of removing the appendix through the gall bladder incision and that defendant's decision to remove the appendix through that incision or his decision to operate at all was negligent. Even if plaintiff could not have discovered all of the underlying medical causes of infection in 1971, including the distal end of the appendix, and even if she could not have discovered *that* cause before trial, she could have brought an action based on the facts outlined above, and a reasonable jury could have returned a verdict in her favor." 62 Or App at 255, 258. (Emphasis in original.)

In *Peterson v. Mult. Co. Sch. Dist. No. 1, supra,* we distinguished *Duncan.* Although the plaintiff in *Peterson* was aware more than two years before bringing his action of an activity of the defendant which arguably had some relationship to the events, that activity was entirely separate from the one to which the plaintiff ascribed his injury, and the first activity almost certainly could not have been an independent basis for a successful action. The *Peterson* distinctions cannot be extended to plaintiffs' negligence claim here. This claim is based on a single course of conduct (defendant's possession and dispensation or nondispensation of information about water availability), and plaintiffs were injured by and had a claim for defendant's negligence when they incurred costs to develop the alternative irrigation system. It is arguable that the injury was attributable more to the unavailability and nondelivery of water than to defendant's representations

about its availability. (Indeed, the same is true of the subsequent crop damage.) However, it cannot be said that the representations played no causal role in producing the first injury. Plaintiffs' expectation that water would soon be available was induced by defendant's representations and played a prominent role in their decision to proceed with the planting. That decision in turn necessitated that they arrange for the temporary irrigation system. The harm which plaintiffs suffered in early June therefore resulted, at least in part, from the specific negligent conduct that plaintiffs alleged against defendant.

The dissent takes the view that the misrepresentation about the availability of water and the failure to warn that it would not be available should be treated separately for the purposes of the Statute of Limitations analysis. The effect of that view would be to make misrepresentation claims almost impervious to a Statute of Limitations defense. The statute would begin to run anew with every passing day that the defendant fails to retract the misrepresentation or to warn that it was inaccurate. We also disagree with the dissent's theory that plaintiffs could not have discovered whether they were harmed until the net profit or loss picture for the growing season became known. The dissent confuses discovery of harm with knowledge of the amount of damage.

We conclude that here, as in *Duncan,* plaintiffs knew more than two years before bringing the action that they had a claim and the statute did not remain tolled until they learned the full extent or nature of their harm or all of the facts which they might ultimately be able to advance to support their claim. The negligence claim was time-barred as a matter of law, and the trial court erred by denying defendant's motion for a directed verdict.[4]

In their cross-appeal, plaintiffs contend that the court erred by granting defendant's motion for partial summary judgment on plaintiffs' contract claim. The court relied on an exculpatory provision in defendant's by-laws. Plaintiffs argue that defendant's adoption of the provision exceeded its

---

[4] Given that conclusion, we do not reach the other assignments defendant makes in connection with the negligence claim. In particular, we do not decide defendant's contention that the court erred by denying defendant's motion for a directed verdict on the ground that "negligent misrepresentations" are not actionable.

statutory authority. They also maintain that the provision is "adhesive" and invalid. We disagree.

■    ORS 545.064(1)(c) authorizes defendant to "establish equitable by-laws, rules and regulations for the distribution and use of water among landowners." The challenged by-law states:

> "The district shall be under no duty and shall not be held liable for failure to deliver water during the irrigation season when such failure occurs from a deficiency of water or from any other causes beyond the control of the district * * *."

The by-law establishes the extent of defendant's obligation to deliver water to its members. Defendant had statutory authority to adopt it. The by-law was not unreasonable, nor was it inequitable because it favored one group of members over another. Adhesion is not pertinent, because the by-law is not part of a contract. It is a unilateral condition that defendant has authority to establish. As members of defendant, plaintiffs are bound by its terms.

Plaintiffs also argue that the harm that they suffered was within defendant's control and, therefore, outside the exculpatory provision in the by-laws. However, on the summary judgment motion, there was no genuine issue of material fact whether the availability of water was within defendant's control. It was not. Plaintiffs assert that, if defendant had informed them that water would not arrive on schedule, the harm would have been avoided. That is not an assertion of a contract claim, however, but merely a restatement of plaintiffs' negligence claim. The court did not err by granting defendant's motion for partial summary judgment on the contract claim.

Reversed on appeal; affirmed on cross-appeal.

**NEWMAN, J.,** dissenting on the appeal; concurring on the cross-appeal.

The majority misunderstands the nature of plaintiffs' claims and, therefore, misanalyzes the Statute of Limitations questions that they present. Accordingly, I dissent on the appeal.

Plaintiffs have two claims. They allege that defendant 1) negligently represented to them that water would be

available for the growing season and 2), subsequently, negligently failed to warn them that water would not be available as promised. *Plaintiffs do not claim that defendants were negligent in failing to deliver water.* The pleaded claims must be analyzed separately. In support of the first claim (for negligent misrepresentation), plaintiffs produced evidence sufficient to create a jury question whether defendant negligently informed them that they would have water by June 1, 1978, whether in reliance on that information they planted crops and whether, as a result of having planted crops, they were damaged. *See McDonald v. Title Insurance Co. of Oregon,* 49 Or App 1055, 1058, 621 P2d 564 (1980), *rev den* 290 Or 727 (1981); Prosser and Keeton, *Law of Torts* 746, §107 (5th ed 1984). Under this theory, plaintiffs could only recover damages if they suffered a net loss by planting in reliance on the misrepresentations. If they made money from the crops planted, even if it was less than they would have made if the water had arrived as represented, they were not damaged *by the misrepresentation. Restatement (Second) Torts,* §552B.[1]

Plaintiffs were entitled only to recover damages caused by defendant's negligence, that is, the loss which they suffered by planting in reliance on its misrepresentations. Accordingly, they could not have known that they were harmed by defendant's negligence until well after June 18, 1978, and within the two-year period of the Statute of Limitations. There is no evidence in the record from which a jury could have found that, as early as June 18, 1978, plaintiffs knew or should have known that their farming operations on the two farms would result in a net loss for the season. Had they sold their crops for a profit, even if the profit was less than expected because of expenditures for another source of water or because of lack of water, they would have suffered no harm attributable to defendant's negligent misrepresentation and would have had *no* claim against defendant.[2] If plaintiffs

---

[1] The measure of damages is not the "benefit of the bargain" measure that often appears in fraud cases. *See Selman v. Shirley,* 161 Or 582, 85 P2d 384, 91 P2d 312 (1939). The majority overlooks this crucial distinction.

[2] The damages were awarded under the fraud standard. The amount that the jury awarded here is not necessarily the net loss that plaintiffs suffered from defendant's negligence. Moreover, the record does not show whether plaintiffs planted other crops in other fields in reliance on defendant's representations and made a net profit thereon. Defendant, however, does not argue that the jury applied an incorrect measure of damages or assert that the court misinstructed the jury on the question of how to compute plaintiffs' damages.

had filed the action on or before June 18, 1978, they would have started it in anticipation of losses that might never have materialized.[3] *See U.S. Nat'l Bank v. Davies,* 274 Or 663, 670, 548 P2d 966 (1976); *see also Bollam v. Fireman's Fund Ins. Co.,* 76 Or App 267, 273, 709 P2d 1095 (1985), *rev allowed* 300 Or 545 (1986). Contrary to the majority's position, the statute had not run when plaintiffs filed the action on June 18, 1980.

The flaw in the majority's reasoning is that it asserts that plaintiffs were "damaged" when they built the alternative irrigation system in early June. That analysis would be correct if plaintiffs' claims were for negligent failure to deliver water. Under plaintiffs' negligent misrepresentation theory, however, the cost of the irrigation system is not damage independent of the loss suffered by plaintiffs by planting in reliance on defendant's misrepresentation. If they had not suffered a net loss on the crops for the season, they could not have recovered the cost of the irrigation system.

*Duncan v. Augter,* 62 Or App 250, 661 P2d 83, *rev den* 295 Or 122 (1983), on which the majority relies, is inapposite. As we stated in *Duncan* (and as quoted by the majority):

> "The general policy behind the 'discovery rule' is to delay the running of the statute of limitations until an injured person knows or should know that she has a cause of action so that the law does not strip her of a remedy before she could know she has been wronged." 62 Or App at 258.

Because plaintiffs did not and could not know before June 18, 1978, that they were going to be damaged *by defendant's misrepresentations, i.e.,* that they were going to suffer a loss by planting in reliance on defendant's representations that it would deliver water, they could not have brought this action before that date.

Furthermore, the majority ignores plaintiffs' second claim of negligent failure to warn. Plaintiffs allege that defendant had an affirmative duty to warn them that water would not be available for the 1978 growing season. The duty allegedly arose out of their "special relation" with defendant as members of the district, *Cramer v. Mengerhausen,* 275 Or

---

[3]If, for example, it had been a rainy summer and plaintiffs had made a profit on the crops they planted in reliance on the misrepresentations, defendant's negligence would not have harmed them.

223, 227, 550 P2d 740 (1976); Prosser and Keeton, *supra,* at 377, §56, and out of defendant's prior misrepresentations. The majority fails to recognize that this duty continued *throughout the growing season.* The jury could have found that defendant breached this duty after June 18, 1978, and thereby injured plaintiffs.[4] Nevertheless, the majority also dismisses this claim on Statute of Limitations grounds.

Accordingly, I dissent on the appeal.[5] I concur on the cross-appeal.

---

[4]The damage issue under this claim could be complicated, but that is not a basis on which defendant attacks the judgment.

[5]The majority does not reach defendant's other assignments of error on the appeal. Accordingly, I do not discuss them.