Argued and submitted March 4, affirmed August 3, reconsideration denied September 16, petition for review denied October 18, 1983 (295 Or 773)

## PETERSON,
### *Respondent - Cross-Appellant,*

*v.*

## MULTNOMAH COUNTY SCHOOL DISTRICT NO. 1 et al,
### *Defendants,*
## The OREGON SCHOOL ACTIVITIES ASSOCIATION,
### *Appellant - Cross-Respondent.*

(A7808-12702; CA A22527)

668 P2d 385

Thomas Sauberli and Walter H. Sweek, Portland, argued the cause for appellant - cross-respondent. With them on the briefs were Arminda J. Brown, and Vergeer, Roehr & Sweek, Portland.

Richard P. Noble, Portland, argued the cause for respondent - cross-appellant. With him on the brief was Kathryn H. Clarke, Portland.

Before Richardson, Presiding Judge, and Warren and Van Hoomissen, Judges.*

RICHARDSON, P. J.

---

* Van Hoomissen, J., *vice* Rossman, J.

## RICHARDSON, P. J.

Defendant Oregon School Activities Association (OSAA) appeals and plaintiff cross-appeals from a judgment for plaintiff in this personal injury action.

Plaintiff is a quadriplegic as a result of a neck injury he suffered at a school football practice on August 24, 1976. At that time, he was 15 years old and a sophomore at Benson Polytechnic School, a high school operated by defendant Multnomah County School District No. 1 (district). August 24 was the second day of preseason practice, and a contact scrimmage was conducted notwithstanding an advisory recommendation of the district against such contact during the first week of practice. Plaintiff's injury occurred when he tackled another Benson player, using his helmet as the point of contact. There was evidence that plaintiff had used the same tackling technique on previous plays during the practice and had been praised by members of the coaching staff for the force or efficacy of his tackles. Prior to the practice, however, the coaches had admonished the players against using the head-contact tackling method.

Plaintiff filed his action against the district and members of the Benson coaching and athletic staff on August 4, 1978. Plaintiff reached the age of 18 on December 23, 1978, and, unless the limitation period for bringing his action was tolled, it expired on December 23, 1979. See ORS 12.110(1); 12.160. He added OSAA as a defendant through an amended complaint filed on October 16, 1980, alleging, inter alia, that OSAA was negligent for failing to require or recommend that member schools undertake various training and safety measures and that they not permit live tackling during the first week of practice or "tackling with the head." Plaintiff also alleged that he did not discover and could not have discovered his cause of action against OSAA "in the exercise of reasonable care" more than two years before the filing of the amended complaint.

OSAA is a private nonprofit corporation which performs certain functions in connection with competitive sports among member schools, including the schools operated by the district. OSAA is a member of the National Federation of State High School Associations. In 1965, a joint committee of

the National Federation and the American Medical Association (AMA) adopted safety recommendations concerning, *inter alia,* contact scrimmages in preseason football practices. After setting forth certain detailed training and preparatory measures and certain limitations on the timing of contact in practices, the recommendations concluded that "[p]ractice games or game condition scrimmages should therefore be prohibited until after a minimum of two weeks of practice." The recommendations were transmitted to member state associations, including OSAA. OSAA did not adopt the National Federation-AMA recommendations as mandatory requirements for member schools and did not publish the recommendations or otherwise disseminate them to the schools.

OSAA regulates a variety of matters relating to athletic competition of member schools, and it has adopted rules relating to the permissible timing of preseason practices. The apparent purpose of those rules is to prevent competitive advantage rather than to promote safety. There was little evidence that OSAA has undertaken to make any regulations about the content of school football practices conducted during the permitted times or that it has assumed any regulatory activities in connection with player safety.[1] OSAA publishes a regular bulletin and makes direct mailings to schools, through which it regularly communicates medical and safety information it receives from the National Federation and other sources.

Shortly before trial, the district and the individual defendants settled with plaintiff for the $100,000 liability limit under ORS 30.270(1)(b).

In addition to denying responsibility, OSAA contended that plaintiff's action against it was barred by the statute of limitations. After some initial confusion, the issue whether the action against OSAA was time-barred was segregated for trial. The trial court denied OSAA's motion for a directed verdict, and the jury found that, in the light of the

---

[1] However, OSAA makes no assignment of error asserting that it moved unsuccessfully for a directed verdict or made any other dispositive motion or asked the court to withdraw allegations from the jury *on the ground that there was insufficient evidence* to support a finding for plaintiff on his allegations pertaining to regulation of practices or safety. At the same time, some of OSAA's arguments seem to assume that plaintiff failed to prove those allegations.

time of discovery rule, the action was not barred. Thereafter, the same trial judge ruled that OSAA was a private organization rather than a public body and was accordingly not entitled to invoke defenses or to assert the limited liability in the Oregon Tort Claims Act.

Trial on the merits was held before a different judge and jury. The jury found that plaintiff's total damages were $1,800,000, but that plaintiff was 40 percent negligent. The trial court entered judgment for $980,000.

OSAA's first assignment is that the court erred by denying its motion for a directed verdict on the statute of limitations issue. It is unclear from the argument OSAA makes in support of its assignment whether its contention is that the tolling of the statute by the time of discovery rule should *never* be a jury question,[2] or that in this case there was not enough evidence for the jury to find that the statute was tolled.

It is settled law that, if the time of discovery rule is legally applicable and if there is supporting evidence, it is a fact question whether or not the plaintiff did discover or reasonably should have discovered the existence of his cause of action against the defendant within two years before bringing an action subject to ORS 12.110(1). *See, e.g., Shaughnessy v. Spray,* 55 Or App 42, 637 P2d 182 (1981), *rev den* 292 Or 589 (1982). Here, there is no issue whether the discovery rule is applicable, *see* n 4, *infra,* or whether plaintiff *did* discover his cause of action against OSAA less than two years before bringing it. The only issue is whether he *should* have discovered the

---

[2] OSAA states:

"At trial, plaintiff used the decision in *Adams* [*v. Oregon State Police,* 289 Or 233, 611 P2d 1153 (1980)] to advance for the first time the theory that if an injured party is reasonably diligent in investigating his case, the statute of limitations does not begin to run until he has 'discovered' his cause of action against the defendant. Since reasonable diligence is a factual question, logically one would assume that most, if not all, statute of limitations issues must now be decided by a jury. But is that what the Supreme Court intended? If so, the opinion has shattered the tolling statute, leaving a thousand jury cases where once a clear rule of law stood. Where is the certainty upon which we have come to rely? Who can say, as a matter of law, when a plaintiff must reasonably be expected to identify his cause of action against, say, the employer of a driver on company business who has an accident? Or an intermediate seller in a products liability case?"

We do not share OSAA's view that *Adams* is the most relevant authority or that it is anomalous.

existence of his claim at an earlier time, or, more correctly, whether there was evidence to support the jury's finding that he should not.

■ In *Hoffman v. Rockey,* 55 Or App 658, 639 P2d 1284, *rev den* 292 Or 722 (1982), we set out the following test:

> "A plaintiff should discover that he has a cause of action when he realizes (1) that he has been injured, (2) that the injury can be attributed to an act of the alleged tortfeasor, and (3) that the act of the alleged tortfeasor was somehow negligent. * * *" 55 Or App at 663.

We also said in *Hoffman,* quoting with approval our earlier statement in *Melgard v. Hanna,* 45 Or App 133, 136, 607 P2d 795 (1980):

> " '[ORS 12.110(1)] does not commence to run until the occurrence of the harm and until such time as it appears reasonably probable that the damage complained of was caused by the *negligence* of defendants and not by some other cause.' (Emphasis added.)" 55 Or App at 663.

OSAA argues:

> "* * * Plaintiff knew of his injury immediately. He had before him some highly visible defendants, his coaches and his school district. His attorneys immediately began investigating his case, exploring all avenues that might lead to other potential defendants. The helmet manufacturer was a key suspect but it turned out to be innocent. No one thought of OSAA. And yet OSAA was not concealing itself or the role it played in high school football. It was not misleading plaintiff or his attorney. * * *
>
> "* * * * *
>
> "* * * Plaintiff's attorney here always knew OSAA played some role in high school athletics. Indeed, the original complaint charged the school district and coaches with negligence in permitting plaintiff to be exposed to the dangers of football before insurance coverage could be 'maintained.' The insurance the complaint refers to was administered by OSAA. And it was [the attorney's assistant's] investigation of this charge that eventually led her to the OSAA office and her discovery of the OSAA bulletins. That, in turn, led to the development of a novel theory of liability against a remote potential defendant.
>
> "And here we touch on what is perhaps the key to the statute of limitations problem *vis-a-vis* the *Adams* [*v. Oregon*

*State Police,* 289 Or 233, 611 P2d 1153 (1980)] decision. Plaintiff's attorney did a great amount of work preparing this case. Files were reviewed, interviews were arranged, experts were consulted, research was done. But only after more than four years did plaintiff come up with a legal *theory* that he could use to bring OSAA into the case. The potential defendant was always there. Open and obvious. The coaches, the players, the school administrators could have, if asked, told plaintiff all about OSAA. That was not the problem. It was the legal theory that escaped recognition." (Emphasis OSAA's.)

It is true that plaintiff's attorney was aware earlier of OSAA's existence and of the fact that OSAA "played some role" in high school football. However, a jury could find that the critical event which put him on notice that OSAA's conduct "was somehow negligent" or was a "reasonably probable" cause of plaintiff's damage was the discovery of the National Federation recommendations. That discovery was made substantially less than two years before OSAA was added as a defendant. Nothing plantiff or those acting on his behalf knew about OSAA before that time could have made him aware that OSAA had failed to require or recommend that the National Federation recommendations be followed or, contrary to its usual practice with medical and safety information, had failed to publish or inform member schools of the substance of the recommendations.

It is arguable that plaintiff knew or should have known earlier that OSAA had regulatory and enforcement authority and that its failure to require that member schools follow certain safety standards was negligent and causal, independently of OSAA's failure to disseminate the National Federation recommendations. We held in *Duncan v. Augter,* 62 Or App 250, 661 P2d 83, *rev den* 295 Or 122 (1983), that a plaintiff who had or should have discovered by 1971 that her problems were attributable to a negligently-performed surgical procedure could not invoke the discovery rule to toll the running of the statute until 1975, when she discovered new particulars about the negligence of the surgery. We explained:

"To start the running of the statute of limitations, a plaintiff need not have knowledge of facts that, if proved, would convince every reasonable factfinder that plaintiff should win. It is sufficient that a plaintiff have knowledge, actual or implied, of facts that, if proved, will at least raise an issue of fact on each element of the claim. Therefore, a plaintiff has

discovered a cause of action and ORS 12.110(4) begins to run when he knows, or should know through diligent inquiry, facts from which a reasonable factfinder could conclude that the plaintiff's injury was caused by an act of the defendant that was somehow negligent." 62 Or App at 255.

This case differs from *Duncan.* The surgery there was a discrete event, and we held that the plaintiff should have known that she had a cause of action against the defendant before she became aware of all the ways in which he was negligent in connection with that event. Here, OSAA's conduct was not unitary; its regulatory role was a separate activity from its publication and mailing of safety information. Moreover, plaintiff produced little evidence at the trial on the merits that OSAA had any duty relating to the safety *regulation* of practices.[3] Before plaintiff's discovery of the National Federation safety recommendations, he would have had very good reason to doubt that a case sufficient for a reasonable factfinder to find in his favor against OSAA on *any* theory could have been made out.

We do not agree with OSAA that what plaintiff was unable to discover within the limitation period following his injury was a legal theory on which to proceed against OSAA. What he did not discover, and what the jury found he should not reasonably have discovered more than two years before joining OSAA as a defendant, were facts on which to predicate his theory. The trial court did not err by denying the motion for a directed verdict.[4]

■ OSAA's second assignment is that the court erred by instructing the jury:

"If you find, however, that the plaintiff and his attorney exercised reasonable diligence in investigating and pursuing the plaintiff's case, but nevertheless did not discover his cause of action against the OSAA until on or after October 16, 1978, his action is not barred by the Statute of Limitations."

---

[3] *See* n 1, *supra.*

[4] In its reply brief, OSAA argues that plaintiff's action against it is based on events which occurred in the 1960's and is therefore barred by ORS 12.115(1), the 10-year statute of ultimate repose. OSAA also argues in its reply brief that the time of discovery rule should not apply to ordinary negligence cases. *See Shaughnessy v. Spray, supra,* 55 Or App at 49. Because those arguments first appear in the reply brief, we do not address them.

The third, fourth and fifth assignments are that it was error for the court to refuse to give instructions requested by OSAA. OSAA's supporting argument for these four assignments is:

> "The instruction [given] comes from language found in *Adams v. Oregon State Police, supra,* but as already discussed, that language goes far beyond the facts of the holding and leads us into dangerous waters. An instruction of this type is prejudicial for it gives no guidelines on what 'reasonable diligence' means. No one disputes that plaintiff's attorneys poured a great amount of work into preparing this case. In that sense they were more than reasonably diligent. And yet, for all of that, plaintiff did not easily or quickly find a theory to use against OSAA. Under these circumstances, a jury hearing this instruction could hardly be expected to find against plaintiff on this issue.

> "But note that *Adams* does not focus on 'diligence' but on a plaintiff having a 'reasonable opportunity to discover his injury and the identity of the party responsible for that injury.' 289 Or 239. Implicit in the holding is the idea that a defendant should not benefit from concealment — either a concealment of the wrong (as in embezzlement, malpractice or conversion) or a concealment of identity (as in a hit-and-run accident or theft). What the court should have given the jury were the three instructions submitted by OSAA. (Assignments of Error Nos. 3, 4 and 5.) These explain concealment, diligence and discovery within the context of the *Adams* decision."

OSAA did not except to the instruction the court gave on the ground that the term "reasonable diligence" was not defined and, insofar as its arguments on appeal inform us, OSAA requested no instruction defining the term. We therefore find no reversible error in the instruction because of that omission.[5]

The flaw we do find in the language OSAA challenges is that it could be understood by the jury as referring to the diligence *this* plaintiff *actually used* in attempting to find the facts rather than to an objective standard for determining whether the cause of action should have been discovered. *See Duncan v. Augter, supra,* 62 Or App at 255; *Hoffman v. Rockey,*

---

[5] The requested instruction which is the subject of OSAA's fifth assignment contains the terms "reasonable care" and "reasonable diligence" but does not define them.

*supra.* However, immediately before the court read the challenged language, it instructed:

> "* * * To avoid the effect of the Statute of Limitations, the plaintiff must present evidence that he and his attorneys did not know and *in the exercise of reasonable diligence could not have known* of the existence of the Oregon School Activities Association or its role, if any, in regulating high school football. * * *"(Emphasis supplied.)[6]

We conclude that, considered as a whole, the court's instructions were not inadequate in any way OSAA asserts.

■ We also conclude that the court's refusal to give the requested instructions was proper. In whole or in part, they are either inaccurate statements of the law, argumentative, redundant or comments on the evidence.[7]

■ In its sixth assignment of error, OSAA turns to the merits and contends that the court erred by denying its motion

---

[6] We do not suggest that this portion of the instructions is correct in any respect except the one we consider.

[7] The three requested instructions were:

"I instruct you that before plaintiff can prevail on the issue of the Statute of Limitations, he must prove by a preponderance of the evidence that defendant Oregon School Activities Association either concealed itself or its role, if any, in regulating high school football.

"* * * * *

"The issue in this case is not the volume of work done by the plaintiff or his attorneys. The fact that any attorney is diligent in preparing some aspects of a case does not discharge him from using reasonable diligence in discovering all potential defendants.

"* * * * *

"The term 'discovery' has been used in this case. 'Discovery' occurs when a party knows, or in the exercise of reasonable care, should have known, that his injury was traceable to the acts or omissions of the defendant.

"In this regard I instruct you that the law considers that a plaintiff 'should have discovered' information:

"1. When he has knowledge of enough facts to excite his attention and put him upon his guard or call for questioning; and

"2. When it appears that a reasonably diligent inquiry would disclose the facts.

"Thus, if plaintiff knew enough that he should be asking questions about the identity and role of O.S.A.A., the law requires him to ask those questions. And if by asking those questions it is demonstrated he would have learned the identity and role of O.S.A.A., then it is said that he 'should have discovered' that information at that time."

for a directed verdict. The *only* argument OSAA makes in support of that assignment,[8] as summarized in its brief, is:

> "OSAA's motion for a directed verdict was based on the concept that a private association cannot, as a matter of law, be charged with the duty either to regulate or make recommendations to a public body performing a governmental activity.

> "The logic supporting the motion requires us to focus on five elements:

> "1. OSAA is a private body.

> "2. Benson Polytechnic School is a public body.

> "3. Football, when practiced at a public school, is a governmental activity.

> "4. A private body cannot regulate a public body performing a governmental activity.

> "5. If OSAA has no power to control or regulate, it has no duty to do so, and cannot be held negligent for its failure to attempt to control or regulate."

We need not decide whether OSAA's proposition that it lacks any legal capacity to exercise regulatory authority is correct, because the conclusion OSAA draws does not follow from that proposition. Given the limited basis for OSAA's assignment of error, the only point it makes is that there is no duty to act reasonably if one has no authority to act at all. That point is plainly wrong. For example, a defendant whose negligent driving caused injury would not be entitled to a directed verdict solely because his operator's license was suspended at the time of the injury.

■ OSAA's seventh assignment is the converse of its sixth. It argues:

> "If the Court decides OSAA had the power and the duty to regulate football practice at a public school, then it was error for the [trial court] to rule as a matter of law that OSAA was not a public body * * *"

and, therefore, was not entitled to the defenses and limited liability provided for public bodies by the Oregon Tort Claims Act. OSAA does not contend that it is a public, rather than a

---

[8] *See* n 1, *supra*.

private, body as a matter of law, *i.e.,* by statute, that the evidence did not support the trial court's finding that OSAA is a private organization or that the question of its public or private status should have been submitted to the jury. The only argument OSAA makes is that it cannot *both* be a private organization *and* have regulatory authority over public school athletic activities. Therefore, it reasons, if the trial court was correct in concluding that OSAA could be found negligent for its regulatory activities involving public school sports, the court was necessarily wrong in finding that OSAA is a private entity. We reiterate that we do not decide in this case whether OSAA is correct in contending that, if it is a private organization, it has no legal authority to regulate. Assuming the correctness of that contention, it does not follow that OSAA is a governmental body. OSAA has contracted with public bodies to perform certain functions. Even if the public bodies have thereby improperly delegated governmental responsibilities to OSAA, that does not make OSAA a public body. OSAA's sixth and seventh assignments of error attempt to show an inconsistency in the trial judges' rulings. The attempt does not succeed. What the assignments suggest instead is that OSAA acted unlawfully as well as negligently.[9]

■ OSAA's eighth assignment of error challenges the court's instruction:

> "Although a party may have no initial responsibility to act in a given area, once he undertakes to act, he must do so reasonably. Therefore, even if you find from the evidence that the OSAA had no initial duty to make reasonable regulations or recommendations as alleged by the Plaintiff, but nevertheless, that the OSAA voluntarily undertook to regulate the matters alleged in the Plaintiff's complaint, that is, regarding practice and what you did at practice, things of that nature, then they would have the responsibility to act reasonably in that regard, and would be liable for negligence in failing to act reasonably. This would be true even if another party also had the duty to

---

[9] We reiterate that the evidence showed that OSAA exercises extensive regulatory authority over many aspects of public school athletic activities, whether or not the regulation extends to practices or safety measures. The relative authority of OSAA and its member schools is addressed at least in passing in *Cooper v. OSAA,* 52 Or App 425, 429, 629 P2d 386, *rev den* 291 Or 504 (1981). *See also* ORS 332.075(6). We do not imply by taking OSAA's argument here on its own terms that we agree that there is any impropriety in its operations.

make regulations and recommendations as alleged by the Plaintiff."

OSAA contends that the question whether it had a duty was one for the court rather than the jury. We do not agree that the instructions improperly allocated the roles of the court and jury in this context. *Blair v. Mt. Hood Meadows Development Corp.*, 291 Or 293, 301-03, 630 P2d 827, *modified* 291 Or 703 (1981).

OSAA also argues, citing *Moch Co. v. Rensselaer Water Co.*, 247 NY 160, 159 NE 896 (1928), that the instruction is legally incorrect, because "the claimed negligence * * * was not an act of commission but an act of omission." OSAA states in its reply brief:

> "As stated in OSAA's exception to this instruction, no evidence exists to show that OSAA ever undertook to regulate what coaches do on the practice field once official practice begins. * * *
>
> "The instruction given by the court would only apply if it were shown that OSAA affirmatively, albeit gratuitously, required a coach to train his team in a way that was both negligent and injurious. If, for example, OSAA had a rule that *required* live tackling on the first day of practice, the instruction might be appropriate. But those are not the facts.
>
> "There is no evidence in this case that OSAA did any affirmative act that exposed plaintiff to a risk of harm. The instruction, therefore, did not apply to the facts and should not have been given. * * *" (Emphasis OSAA's.)

OSAA's argument misses the point. Restatement (Second) Torts, § 323, *comment a* at 136 (1965), states:

> "This Section applies to any undertaking to render services to another which the defendant should recognize as necessary for the protection of the other's person or things. *It applies whether the harm to the other or his things results from the defendant's negligent conduct in the manner of his performance of the undertaking, or from his failure to exercise reasonable care to complete it or to protect the other when he discontinues it.* It applies both to undertakings for a consideration, and to those which are gratuitous. As to whether a mere promise, without entering upon performance, is a sufficient underaking within the rule stated in this Section, see Comment *d* below." (Emphasis supplied.)

Assuming without deciding that the undertaking to act must always be affirmative in order for a volunteer to have a duty, once the duty is undertaken it can be breached by a negligent *failure* to perform, as well as by negligent performance. There was ample evidence from which the jury could find that OSAA voluntarily undertook to make safety recommendations or to disseminate the safety recommendations of others to the schools and that its failure to follow that practice with respect to the National Federation recommendations was negligent. There was also evidence that OSAA had undertaken regulation of many aspects of its member schools' athletic activities, including regulation of the timing of practices; whether the jury could find from that that OSAA was negligent because it failed to promulgate rules relating to safety at practices is a question we need not decide. There is no assignment that a directed verdict or other ruling to take that issue from the jury was sought on evidentiary grounds and denied. *See* n 1, *supra.* Moreover, even assuming that OSAA had a duty to regulate, the court's instruction was legally correct, in connection with the allegations of negligent failures to recommend, and OSAA does not claim on appeal that it requested the court to limit its "volunteer's duty" instruction to those allegations. We find no error.

 The next assignment is that the court erred by refusing OSAA's requested instruction:

"If the School District No. 1 had a rule (recommendation) in effect at the time which, if followed would have prevented plaintiff's injury then defendant OSAA would not be liable for failing to require or recommend such a rule."

OSAA argues:

"* * * The major focus of plaintiff's case was aimed at a need for a rule or recommendation against physical contact during the first week of football practice. But the school district already had this recommendation in their athletic rules. Plaintiff's coach knew about this recommendation, which applied equally to all coaches in the Portland Interscholastic league. But [plaintiff's coach] chose to ignore it. That being so, how could the same rule or recomendation coming from OSAA possibly have prevented plaintiff's injury? Passing such a recommendation would have proven futile and the law does not require futile acts."

There was evidence that member schools and coaches would have complied with an OSAA recommendation. The substance of the requested instruction was a matter for argument, and it was properly refused as an instruction.

Two of OSAA's four remaining assignments of error do not warrant comment, and we reject the other two on the basis of controlling authority.

■ Plaintiff cross-appeals, assigning as error the method by which the trial court computed his damages. The jury found plaintiff's actual damages to be $1,800,000. It found that OSAA's comparative fault was 60 percent and that plaintiff's was 40 percent. The court reduced the $1,800,000 figure by 40 percent and *then* deducted the $100,000 settlement with the district and its employes to arrive at the damages plaintiff was entitled to recover from OSAA. Plaintiff contends that the court should have subtracted the settlement from the $1,800,000 and *then* applied the jury's apportionment of fault to the remainder.

Nothing in the contribution or comparative fault statutes *dictates* either of those alternative approaches. The parties cite conflicting authority from other jurisdictions and no Oregon case authority. Plaintiff argues, in essence, that his approach is more compatible with the objectives of the comparative fault statute in cases where there is a settlement with a joint tortfeasor, because the jury makes no finding about the settling tortfeasor's share of the fault for the total injury in such situations. Consequently, according to plaintiff, the court's method of computation penalized him for and gave OSAA the benefit of his settlement with the district and its coaches, although a jury *might* have found that the tortfeasors' *combined* comparative fault substantially exceeded plaintiff's if the district and the coaches had been codefendants with OSAA at trial.

Although there is some logic to plaintiff's argument, we do not adopt it. If only one plaintiff and one defendant are before it, the jury's apportionment of fault properly should reflect its view of how much responsibility *those* parties bear for the injury *compared to one another,* not compared to the universe of other possible parties about whom the jury is not informed and, theoretically, is unaware. Moreover, settlements are generally based on the parties' speculations about

what the plaintiff would *recover* against the defendant if the case went to trial. Presumably, parties take comparative fault into account in reaching settlements, and they also consider what the jury might find the comparative fault of codefendants to be. The effect of plaintiff's argument would be to place the risk of a codefendant's advantageous settlement on the defendant who did not settle rather than on the plaintiff who did. *See* ORS 18.440(3), 18.455(1)(b).

We recognize that the bases for our disposition of the cross-appeal ring false in this case, where the settling defendants' liability is limited by statute to a small fraction of plaintiff's actual damages and where the settling defendants' comparative fault is manifestly enormous. However, plaintiff suggests and we can think of no basis for accepting his argument here if, as we conclude, it should not be applied generally in comparative fault cases when a joint tortfeasor has settled with the plaintiff.

Affirmed.