Argued and submitted April 22, affirmed December 4, 1985, reconsideration denied January 31, petition for review denied April 15, 1986 (300 Or 722)

SELLS et al,
*Appellants,*

*v.*

NICKERSON et al, Respondents.

(A8103-01848; CA A33469)

711 P2d 171

James K. Gardner, Hillsboro, argued the cause and filed the briefs for appellants.

I. Franklin Hunsaker, Portland, argued the cause for respondent William A. Nickerson. With him on the brief were Ronald E. Bailey, James G. Driscoll and Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Jane Ellen Stonecipher, Assistant County Counsel, Portland, argued the cause for respondent Multnomah County. With her on the brief was John B. Leahy, County Counsel, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiffs appeal a judgment on a directed verdict for defendant Multnomah County and on a jury verdict for defendant Nickerson.[1] We affirm.

Nickerson applied to the county in 1977 for approval to develop a 10-acre hillside subdivision on a tract above and to the north of plaintiff's adjoining tract. The natural drainage of surface water from both tracts is into a ravine on the east sides of the tracts. In September, 1977, the county approved Nickerson's application. The application included a request for permission to pave the streets in the subdivision. A condition of the approval was that, "No surface water from any lot shall be disposed of onto a dedicated public right-of-way."

Nickerson began to develop the subdivision in April, 1978. By August, 1978, he had cleared ground, cut and paved two streets, built curbs and installed drains and storm sewers in the streets. The drains were designed to catch water running down the hill and divert it into storm sewers before it crossed one of the streets and flowed onto plaintiffs' property. Plaintiffs noticed in late 1978, however, that an unusual amount of water from the subdivision was flowing across a paved street onto their property.

Nickerson sold lots in the subdivision to various construction companies. Between September, 1978, and April, 1979, the county issued at least 17 building permits to builders who had purchased lots. Construction began in the spring of 1979. In the winter of 1979-80, debris from the construction work clogged the drains in the streets, and storm water from the subdivision flooded plaintiffs' backyard. Plaintiffs complained, and the drains were unplugged several days later.

Similar drainage problems occurred in the winter of 1980-81. Debris clogged the drains, and storm water flowed across the street onto plaintiffs' property. In 1981, plaintiffs installed a drain system on their own property at a cost of approximately $30,000 to divert surface water from the subdivision into the ravine. Plaintiffs also suffered substantial water damage to their property.

---

[1] Plaintiffs also appealed a summary judgment in favor of the City of Portland. That appeal was dismissed by stipulation of the parties.

Plaintiffs filed a claim with the county in February, 1981.[2] They filed this action against the county, Nickerson and others on March 25, 1981. Plaintiffs' complaint alleged that the county was negligent in

"A.   Permitting the defendants to pave the dedicated street before they submitted for approval plans and calculations designed to:

"1.   Accommodate a ten year return storm for the affected area.

"2.   Dispose of roof and lot drainage of surface water by direct flow into a public storm sewer or an approved, well defined natural channel.

"3.   Drain the dedicated paved street into a public storm sewer or an approved, natural channel.

"B.   In issuing building permits to purchasers of the several lots prior to receiving 'as built plans' showing compliance with 1, 2 and 3 above.

"C.   In issuing final inspection and approval to the several holders of building permits prior to receiving 'as built plans' showing compliance of [sic] 1, 2 and 3 above."

Plaintiffs also alleged, as an inverse condemnation claim, that the county took their property without just compensation because it

"increased the amount and rate of the flow of the surface water from [the subdivision] and diverted it from the natural water course onto a dedicated street where it is collected and funneled onto the plaintiffs' property.

"That since October of 1980, water diverted onto the plaintiffs' property has and is washing large amounts of topsoil from plaintiffs' property. The water has and is causing the floor of their home to sink and crack. That the same constitutes a taking of plaintiffs' property for public use in the sum of $145,332.16."

At the close of plaintiffs' case, the court granted the county a directed verdict on the negligence claim, because plaintiffs had not given the county notice within 180 days after the alleged loss or injury, as ORS 30.275 requires, and had not established that the county had a legal duty "to

---

[2] The notice of plaintiffs' claim set out substantially all of the facts in their complaint.

protect one landowner from another landowner's improper discharge of * * * water and sewage * * *." The court also granted the county a directed verdict on the inverse condemnation claim, because "the damage * * * is not from property that belongs to the public and not from a public activity." Plaintiffs assign these rulings as error.

■■ We agree with the court that plaintiffs' negligence claims against the county are barred. ORS 30.275. The 180-day notification period runs from the date when plaintiffs knew or should have known that (1) the county was negligent, (2) they were harmed and (3) the harm was the result of the county's negligence. *Peterson v. Mult. Co. Sch. Dist. No. 1,* 64 Or App 81, 668 P2d 385, *rev den* 295 Or 773 (1983); *see Adams v. Oregon State Police,* 289 Or 233, 611 P2d 1153 (1980). There was uncontroverted evidence that plaintiffs knew or should have known in 1978 that the county had given Nickerson permission to pave the streets and knew or should have known by spring, 1979, that the county had issued building permits to builders who had purchased lots. Those are two of the three acts of negligence that plaintiffs allege against the county. The evidence is uncontradicted that, in the winter of 1979-80, plaintiffs knew that storm water from the subdivision had damaged their property and they knew or should have known of the county's acts which they alleged caused that harm. Accordingly, as to those two acts of negligence, the 180-day period had commenced to run by the end of the winter of 1979-80, and for those acts the negligence claim is barred.[3]

■ As to the third allegation of the county's negligence ("issuing final inspection and approval to the several holders of building permits prior to receiving 'as built plans' "), plaintiffs failed to allege or prove the date on which the county made the final inspection or issued its final approval. Plaintiffs, therefore, failed to meet their burden to show that they had complied with the 180-day notice requirement. ORS 30.275(7).

■ We also reject the assignment of error as it relates to

---

[3] In *Holdner v. Columbia County,* 51 Or App 605, 627 P2d 4 (1981), the plaintiff brought an action for water damage caused by the county's road repairs and negligent maintenance of drainage ditches. We concluded that the plaintiff's notice to Columbia County was timely because the county's negligent maintenance amounted to a continuing tort and some of the events to which the notice referred apparently occurred within the 180-day notice period.

plaintiffs' inverse condemnation claim against the county. In *Thornburg v. Port of Portland,* 233 Or 178, 192, 376 P2d 100 (1963), the court said:

> "[A] taking occurs whenever government acts in such a way as substantially to deprive an owner of the useful possession of that which he owns, either by repeated trespasses or by repeated nontrespassory invasions called 'nuisance'."

Here, there was no evidence of any county action that deprived plaintiffs of the useful possession of their property. The evidence only showed that the county approved Nickerson's design and construction plans for the subdivision and imposed certain conditions on them. The plans provided for construction of drains in the streets. The county also issued building permits to various builders and may have inspected and approved their construction of houses on the lots. The evidence is uncontroverted, however, that plaintiffs' water problems were caused by a failure of the subdivision's drainage system unrelated to its design or construction or to the design or construction of buildings on the lots. The court found that "the evidence actually is that it failed because somebody dumped dirt in it." Whether that was the cause of the drainage system's failure, or whether the system failed because of Nickerson's negligent maintenance, was for the jury to decide. The jury could not, however, have found from the evidence that the system failed as a result of anything the county did. As a matter of law, therefore, the county's actions were not the cause of plaintiffs' damage. The court did not err when it granted the county's motion for directed verdict on the inverse condemnation claim.[4]

■     Plaintiffs alleged that defendant Nickerson was negligent in failing properly to design, construct and maintain the subdivision's drainage system.[5] Plaintiffs assign as error that

---

[4] ORS 30.275 does not apply to inverse condemnation actions. *See Suess Builders v. City of Beaverton,* 294 Or 254, 656 P2d 306 (1982).

[5] The complaint contains these allegations of negligence on Nickerson's part:

"A. Failing to calculate the amount of surface water to be drained.

"B. Failing to furnish the calculation to the County.

"C. Failure to design a storm sewer of sufficient capacity to accommodate a 10 year return storm.

"D. Failure to design a storm sewer to provide for the drainage of surface

the court refused their request that it instruct the jury:

> "If you find [Nickerson] diverted surface water by artificial drains from the course which it would otherwise take and cast it, in a body large enough to do substantial injury, upon the land of another, where but for such artificial drainage it would not go, then you must find for the Plaintiffs."

That is not a correct statement of the law. Nickerson could be liable only if the trespass was intentional or arose out of his negligence or abnormally hazardous activity. *Koos v. Roth,* 293 Or 670, 673 n 1, 652 P2d 1255 (1982); *Hudson v. Peavey Oil Company,* 279 Or 3, 6-7, 566 P2d 175 (1977); *Loe et ux v. Lenhard et al,* 227 Or 242, 248, 362 P2d 312 (1961). There was no claim or evidence that Nickerson was engaged in an abnormally hazardous activity or that he intended to divert surface water onto plaintiff's property. Plaintiffs' requested instruction would have permitted the jury to hold Nickerson strictly liable. The court did not err when it rejected it.

■ Plaintiffs also assign as error that the court withdrew allegations of negligence (D) and (G) from the jury's consideration. *See* footnote 5, *supra.* The assignment is without merit. Failure of the drainage system is not, by itself, sufficient evidence that it was designed negligently. *See Quirk v. Ross,* 257 Or 80, 86-87, 476 P2d 559 (1970). Other than the

---

water from the lots to flow directly into a public storm sewer or into an approved, well-defined natural channel.

"E. Failure to design a storm drain which would drain the dedicated paved street into a public storm sewer or into an approved, well-defined natural channel.

"F. Failing to construct a storm sewer to provide for drainage of a 10 year recurrent storm.

"G. Failing to construct a storm sewer which provided for drainage of surface water from the lots directly into a public storm sewer or into an approved, well-defined natural channel.

"H. Paving the dedicated street before installing a storm sewer which complied with Multnomah County's ordinance.

"I. Selling the individual lots before installing an adequate storm sewer for the drainage of the surface water from the lots.

"J. Failure to provide for the maintenance of the storm sewer system."

The court allowed plaintiffs' claim against Nickerson to go to the jury only on the specification of negligence (J).

failure of the drainage system, there was no evidence of negligent design.[6]

Plaintiffs also introduced no evidence of Nickerson's negligent construction. The uncontroverted evidence showed that he built the drainage system as it was designed. Thus, the trial court properly withdrew plaintiffs' allegations of negligent construction.

■ Plaintiffs assign as error that the court sustained Nickerson's objection to introduction in evidence of his performance bond and of his project agreement with the county. The court stated that the exhibits "are a contract between two parties to which the plaintiffs are not a party, and I can't see that the plaintiffs acquire any rights through these agreements." As to the performance bond, plaintiffs do not even argue its relevance. They do argue that the project agreement required Nickerson to keep the paved street free of debris and the drainage system operating efficiently.[7] Plaintiffs rest their argument on *Larson v. Heintz Const. Co. et al,* 219 Or 25, 345 P2d 835 (1959), where the court found that a construction

---

[6] Plaintiffs also argue here that it is evidence of negligent design that Nickerson failed to comply with the county requirement that "No surface water from any lot shall be disposed of onto a dedicated public right-of-way." Plaintiffs conceded at trial, however, that, apart from the failure of the system, there was no evidence of negligent design. The court and plaintiffs' attorney had the following exchange:

"Subparagraph D is the same thing over again, isn't it?

"(PLAINTIFFS' ATTORNEY): What?

"THE COURT: 'D'. It's again the failure to design a storm sewer to provide for the drainage of surface water from the lots that flow directly into a public storm sewer. The evidence is that was the purpose of the design, and the only evidence to the contrary would be that it overflowed, wouldn't it? Did anybody else offer testimony on that?

"(PLAINTIFFS' ATTORNEY): I think you are correct on that, Your Honor."

[7] The project agreement provided:

"(E) If the Grantee requests Multnomah County to take over the streets before all the houses are completed, he shall be required to furnish a maintenance bond in the sum of $5,000.00, to insure that he shall construct, maintain, repair, replace and be responsible for any damage to curbs, sidewalks, driveway approaches, and/or pavement; and further agrees to keep the pavement area free from debris, dirt and/or foreign material at all times; and be responsible for the efficient operation of the sumps, storm drains, and/or catch basins in all streets included in this permit until such time as houses have been constructed upon all the lots abutting the streets herein described."

contract between the state and certain contractors was admissible to show what the contractor "conceived the measure of his duty to be"—in that case, to install a warning signal at an access road. 219 Or at 53. *Larson,* however, does not mean that a copy of the construction contract must always be admitted to establish the contractor's duty.

In any event, plaintiffs were not prejudiced by the court's ruling. OEC 103. The question was whether Nickerson owed plaintiffs the duty properly to maintain the drainage system. That was for the court to decide, and its instructions to the jury make clear that it decided the question in plaintiffs' favor:

> "Now, what is negligence? In general, it is the duty of every person in our society to use reasonable care in order to avoid damage to himself or herself or any other person in any situation in which it could be reasonably anticipated that a failure to use such care might result in damage.
>
> "* * * * *
>
> "Under the facts and circumstances of this case, liability may be placed upon the Defendant, Mr. Nickerson, only if you find that he was negligent in the maintenance of the storm sewer system, and that any such negligence was a cause of the Plaintiff's damage."

If the court erred in excluding the project agreement, its error was harmless.

Affirmed.